BROWNE v. WEST et al.

(Supreme Court, Appellate Division, Third Department. March 8, 1911.)

Appeal from Order Entered on Report of Referee.

Action by Thomas A. Browne against Walter S. West and another. Judgment for plaintiff, and defendants appeal. Modified and affirmed conditionally.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, SEWELL, and BETTS, JJ.

Salisbury & Rowe, for appellants.
Edgar T. Brackett, for respondent.

SEWELL, J. Order reversed and new trial granted, with costs to appellant to abide event, unless plaintiff stipulates, within 30 days, to reduce the recovery to $500, in which case the judgment is modified, and, as so modified, affirmed without costs to either party. All concur, except BETTS, J., dissenting in opinion.

BETTS, J. (dissenting). In this action Mrs. Walter S. West, of the village of Ballston Spa, Saratoga county, N. Y., went to Rutland, Vt.,

and consulted with the plaintiff, a lawyer and a stranger to her. He gave her certain advice on that and other occasions. Some time thereafter an action was brought for a separation by Mrs. West against the defendant, Walter S. West, by Senator Edgar T. Brackett, respondent's attorney here. The separation action was changed by an amendment into an action for absolute divorce, which was obtained, and in that action $1,500 was allowed for counsel fee and $5,000 alimony yearly for the support of Mrs. West and the two infant children of herself and the incompetent, Walter S. West. The interlocutory judgment of divorce was entered on February 10, 1908, and the final judgment of divorce on July 11, 1908. On December 9, 1907, Walter S. West, after the commencement of the divorce action and before its termination, was adjudged to be an habitual drunkard and incompetent to manage himself or his affairs, and the appellant William J. Delaney was appointed the committee of his person and estate. For the advice and counsel (and some disbursements) plaintiff gave to Mrs. West, a claim was presented to William J. Delaney, the committee of said Walter S. West under the statute, rejected or disputed by him, a trial was had before a referee, who found for the plaintiff the sum of $4,500 for such legal services and disbursements, whereupon the committee has appealed from the judgment entered thereon to this court.

I think no recovery can be had in this case upon the facts shown before the referee and upon which the judgment is founded for at least three reasons: First. That the services rendered by the plaintiff to Mrs. West were not necessaries within any decision in this state or as the law now is. Second. If they were necessaries, the only ground on which a recovery could be had here would be on the theory that such services were necessary for the preparation of the separation action. No such recovery can be had if the action is brought for absolute divorce. The plaintiff was not admitted to practice in this state, hence could not and did not bring the action for a separation. Third. If necessary and rendered in the action for a separation or as a preliminary thereto, the separation action was not tried but ripened into an action for an absolute divorce, and in that action the plaintiff Mrs. West was allowed $1,500 for counsel and $5,000 for alimony. It is to be assumed that the court would make the allowance for counsel fee cover all proper and legal allowances to the time that it was granted in the action, which, of course, covered separation and divorce, and no services have been rendered since, nor could there be in that action; hence this incompetent's estate has already been charged with the full amount that there is any authority to charge it with in this court, or that it rightly should be charged with.

The evidence shows: That all of Mrs. West's bills were paid by her husband. That this plaintiff only presented one bill, and that of $25, to her, which was at once paid. Walter S. West is a residuary legatee and devisee in about one-third of the large estate of his father, the late George West, and, if he lives to arrive at the age of 40 years, will obtain such one-third. In the meantime his only income is derived from that estate, and is about $7,000 per year. Allowing the most liberal construction of the somewhat confusing testimony of the plain-

tiff as to the number of interviews that he had with Mrs. West, it would appear that there were 12 of them, most of them in Vermont, some in Ballston Spa, her home, and one at least in New York. The plaintiff testifies that what Mrs. West consulted him for and desired advice from him concerning was an action for a divorce in the first interview, September 12, 1906, at Rutland, Vt., and in most of the subsequent interviews, although she did ask for some information concerning the extent of her husband's estate and the rights which she and her children might have under her husband's father's will. The first interview between the plaintiff and Mrs. West was at Rutland, Vt., where the plaintiff was a practicing attorney of that state, and had then been admitted some seven or eight years. He has not held a judicial office there or elsewhere, although the referee refers to him as "Judge." He is admitted to practice in the United States courts, but not in the courts of the state of New York.

Mrs. West testifies that she went to Rutland to consult this attorney so her husband might not learn of her consulting any attorney, yet on October 16, 1906, a little over one month after the first interview, the plaintiff came to the village of Ballston Spa, where Judge L'Amoreaux and Mrs. West and Walter S. West all resided, and consulted with said L'Amoreaux as to the situation of Mrs. West and concerning her matters. Later another consultation was had with Judge L'Amoreaux, at which Mrs. West was present, in New York City, in Judge L'Amoreaux's New York City office. During the entire time that the plaintiff was consulting with Mr. Browne, or at least most of the interviews, he declares she was asking for a divorce, and requesting a divorce, and he was advising her not to take such action. In her first interview plaintiff testifies:

"Mrs. West said she desired to consult with me in reference to matters pertaining to her domestic relations. She went into some details in reference to the circumstances then existing or rather at Ballston Spa at her home and wanted to know of me, in my judgment, if it did not constitute grounds for divorce, if that would not be the proper thing for her to do at that time to bring a proceeding for a divorce."

Plaintiff stated that it did constitute proper grounds for divorce. In the second interview Mr. Browne "again advised Mrs. West not to bring proceedings for a divorce," as he testifies, and he advised her at numerous times against a divorce, and on the 18th of November, 1907, he testifies that he saw that Mrs. West "had arrived at that stage where my advice to her, not considering any steps looking toward a divorce, had ceased to have any influence with her. She said conditions had got to such a pass she simply could not continue, and, that if I persisted in saying she ought not to have a divorce and persisted in advising not to take any steps looking toward a divorce, she would simply have to do something else, she simply could not continue and put up with it any longer. I asked her if there was an attorney in whom she had confidence in Saratoga, and I would be glad to talk with him. She said Senator Brackett." Later Senator Brackett brought the action, and about January 29, 1908, plaintiff's services were ended in connection with the affair.

Thus it appears here that Mrs. West living in the village of Ballston Spa where also lived a very competent lawyer, l'Amoreaux, whom she well knew and who was in every way able to advise her and who did advise her, and that seven miles away, in the village of Saratoga Springs, Senator Brackett resided, thoroughly competent, whom she had confidence in and whom she subsequently employed to bring her action, neither of whom had any entanglements with the West estate, consults with a lawyer in Vermont, a stranger who cannot and does not bring her action, and this lawyer now attempts to hold the husband's estate for the value of such services on the ground that they were necessaries (within the meaning of the legal decisions) for her to have, I think such is not the law of this state, and that such a claim should not be supported. What are necessaries in any given case for which a wife can bind her husband's estate must be determined by the facts in each case. This court will take judicial notice that in Ballston Spa and Saratoga Spa are many thoroughly competent lawyers, officers of this court, whom Mrs. West could well have consulted and employed, and who could have advised her of her rights and obtained them for her, and at least two of whom she did consult, and one of whom, Senator Brackett, did act for her in court in her case, and that she was not driven to Vermont. All the relief she needed, all the necessaries that any decision can hold that she was entitled to, she could obtain near by. If she can bind her husband's estate by employing lawyer Browne from Rutland, Vt., she could logically do the same if she had employed lawyer Smith from Los Angeles, Cal., or lawyer Jones from Austin, Tex.

The nearest perhaps that any decision comes to holding what is claimed here, and a case which is cited by the referee in his report, is Naumer v. Gray, 28 App. Div. 529, 51 N. Y. Supp. 222, an action reported also in 41 App. Div. 361, 58 N. Y. Supp. 476. That was an action in which the plaintiff, a lawyer in this state, sued the husband for the value of legal services rendered by him in the institution and prosecution of an action against the husband by his wife for a separation upon the ground of cruel and inhuman treatment. A recovery was permitted in that case, but it was held that to succeed in it the plaintiff, the attorney, must show affirmatively that the suit was for the protection and support of the wife, and that the conduct of the husband was such as to render its institution and prosecution reasonable and proper, and that no alimony and counsel fee had been granted or paid. The court said in reference to a more drastic rule in England that we should hesitate to accept such a rule and be inclined to the opinion that in case an application had been made in the divorce action, and the court had therein determined the alimony and counsel fees to be awarded to the plaintiff, such determination conclusively established the measure of the husband's liability. In that case it appeared that the wife had returned to her husband.

The referee here cites Kellogg v. Stoddard, 40 Misc. Rep. 92, 81 N. Y. Supp. 271, where a recovery was permitted at the Trial Term on two grounds: First, on the ground that the services were necessary, to pay for which she could pledge her husband's credit on the authority of Naumer v. Gray, supra, but that part of the opinion was obiter, and the other point decided in the opinion referred to by the

referee here was reversed in 89 App. Div. 137, 84 N. Y. Supp. 1015, for reasons therein stated. It was also held in Hays v. Ledman, 28 Misc. Rep. 575, 59 N. Y. Supp. 687, Supreme Court, Appellate Term, that the husband was liable for the value of an attorney's services rendered to the wife in the defense of her husband's suit for a separation, although they had been reconciled and the action discontinued. There is one other case—Langbein v. Schneider, 27 Abb. N. C. 228–252, 16 N. Y. Supp. 943—arising in the Seventh Judicial District Court of New York City, in which a recovery was permitted where an action had been begun but the papers were never served, the parties having become reconciled; the court in a very brief opinion holding that such a recovery might be had from the husband upon the ground of his wife's implied agency to bind him for necessaries.

To the contrary is Damman v. Bancroft, 43 Misc. Rep. 678, 88 N. Y. Supp. 386, a decision of the Appellate Term of the Supreme Court where an attorney sought to recover of the husband for legal services he rendered to the wife in an action brought by said attorney to procure for her a separation from her husband. It appeared that the action was still pending, the wife appearing by a substituted attorney. In that case, the court on the application of the original attorney, Damman, awarded him counsel fee and the wife alimony. The husband and wife remained unreconciled and lived apart. The court held that a recovery could not be permitted. It was held in Williams v. Dodge (General Term, New York Common Pleas) 8 Misc. Rep. 317, 28 N. Y. Supp. 729, that an attorney, a resident of another state, cannot maintain an action here for professional services rendered in such state, in the absence of plea or proof that under the law of such state a lawyer can recover for his services. No such proof was submitted here. In McQuhae v. Rae, 3 Misc. Rep. 550, 23 N. Y. Supp. 16, in the Court of Common Pleas, it was held that a husband is not liable for the services of an attorney rendered on behalf of his wife in proceedings prosecuted by the people against him for nonsupport. In Hahn v. Rogers (Supreme Court, Appellate Term) 34 Misc. Rep. 549, 69 N. Y. Supp. 926, where a recovery was sought by the attorney against a husband for services rendered the wife looking to the institution by her of an action of separation based on her abandonment by him, the jury found in favor of the defendant and the verdict was upheld. In Phillips v. Simmons, 11 Abb. Prac. 287, also, it was held that an action such as is brought here would not lie.

The authorities seem to be practically uniform that a recovery cannot be permitted by an attorney against a husband for services rendered his wife in obtaining or in endeavoring to obtain a divorce. In Uhlman v. Uhlman, 51 New York Super. Ct. 361, it is held that an allowance should not be made for two counsel, unless it is affirmatively shown that two are necessary. Nothing is shown here that there should be additional counsel to Senator Brackett, or that there should be additional counsel to Senator Brackett and Judge L'Amoreaux, who were competent to fully protect the rights of Mrs. West. The court has already decreed payment to Senator Brackett. How Judge L'Amoreaux is to be paid does not appear, but certainly no part of plaintiff's claim is for his services.

The evidence offered on this trial, in addition to that of plaintiff and Mrs. West, shows that the wife's desire for a divorce at the first and practically all subsequent interviews was right and just. The support of a rival establishment and another woman in an adjoining village by her drink-crazed husband with all its revolting accessories were such as to fill with loathing the breast of any loyal wife and mother. To her frenzied and continuous appeals for an absolute release from this galling bondage for over a year was put forth the answer to wait —wait until finally wait no longer she would, when separation was commenced to be changed to divorce before trial, and now a bill is presented for services concerning an action for separation. The law is against any such bill for services in a divorce action, although recovery is sometimes permitted in an action for a separation. The bare statement of the facts is a strong plea against this claim, and calls for little judicial comment.

Under certain contingencies which, owing to the age and former habits of Walter S. West, may easily occur, the two infant children of Walter S. West may succeed to said Walter's share of his father's estate. In any event, they and Mrs. West are interested that it shall not be unduly depleted. It must not be lost sight of that this incompetent and these two infants are the wards of this court and the objects of its peculiar solicitude and protecting care. Hence it is that any claim or claims presented against the estate of Walter S. West should be closely scrutinized and examined, to the end that no unjust claim should be allowed, or that the funds of the helpless wards of this court should be depleted by permitting claims against the same to be established, unless in full accord with well-established legal principles and in line with the plain trend of judicial decisions. I am convinced that this is not such a claim.

I recommend, therefore, that the judgment be reversed on the law and the facts, and a new trial granted, with costs to the appellant to abide the event.